UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES HENRY ARTHUR,

        Petitioner,

v.

RANDALL HAAS,

        Respondent.

_____/

Case No. 14-13099

HON. AVERN COHN

**<u>MEMORANDUM AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY</u>**

I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Charles Henry Arthur, (Petitioner), is a state inmate sentenced to terms of life in prison for armed robbery, M.C.L.A. 750.529, assault with intent to murder, M.C.L.A. 750.83, kidnapping, M.C.L.A. 750.349, and carjacking, M.C.L.A. 750.529a; ten to twenty years for extortion, M.C.L.A. 750.213; three to five years for felon in possession of a firearm, M.C.L.A. 750.224f, and carrying a dangerous weapon with unlawful intent, M.C.L.A. 750.226; and two years for felony-firearm, M.C.L.A. 750.227b. Petitioner, though counsel, has filed a petition for a writ of habeas corpus claiming that he was denied his right to self-representation and denied his right to a fair trial because he was placed in leg shackles during his trial.

Respondent, through the Attorney General's Office, filed a response contending that Petitioner's claims lack merit. For the reasons that follow, the petition will be denied.[1]

## II. Procedural History

Petitioner was originally convicted in 2006, following a jury trial in the Saginaw County Circuit Court. Petitioner appealed, contending in part that the trial court improperly denied him the right to represent himself. The Michigan Court of Appeals, 2-1, affirmed Petitioner's conviction. The dissenting judge believed that Petitioner properly invoked his right to self-representation. People v. Arthur, No. 273577, 2008 WL 239627 (Mich. Ct. App. Jan. 29, 2008).

In lieu of granting leave to appeal, the Michigan Supreme Court reversed the court of appeals' opinion on the issue of self-representation and remanded the matter to the trial court for a new trial. People v. Arthur, 481 Mich. 882 (2008).

---

[1] Respondent also argues that the Court should decline to review Petitioner's claims under the concurrent sentence doctrine because Petitioner is separately serving three non-parolable life sentences for two first-degree murder convictions and a conspiracy to commit murder conviction. Respondent also notes that Petitioner's state appeals been exhausted in this other case and he has been denied habeas relief by the undersigned. See Arthur v. McQuiggin, 2:07-CV-13444 (E.D. Mich. Mar. 27, 2014); appeal dism. No. 14-1432 (6th Cir. Oct. 8, 2014). The concurrent sentence doctrine allows a federal court to decline to review habeas corpus petitions "which challenge criminal convictions that have resulted in sentences, and other collateral consequences, which are wholly subsumed by those conferred by other unassailable convictions." Wilson v. Straub, 185 F. Supp. 2d 766, 769 (E.D. Mich. 2002)(internal quotation omitted). However, a federal district court should exercise its discretion to decline to review a habeas claim under the concurrent sentence doctrine only in a case where it is clear that there are no collateral consequences to the petitioner and the issue does not involve a significant question that merits consideration. Id. "The concurrent sentencing doctrine is a discretionary one, and courts 'are admittedly hesitant to apply [it].'" Groves v. Meko, 516 F. App'x. 507, 508 (6th Cir. 2013)(quoting Dale v. Haeberlin, 878 F.2d 930, 935, n. 3 (6th Cir. 1989)). The Court declines to invoke the concurrent sentence doctrine in part because Respondent has not made a concerted effort to show that there are no collateral consequences attaching to Petitioner's convictions. See Pillette v. Berghuis, 408 F. App'x 873, 886, n. 8 (6th Cir. 2010).

On remand, Petitioner moved to represent himself. The trial court granted the request. Petitioner then requested that his leg shackles[2] be removed so he could move around the courtroom. The trial court denied the request for security reasons. As a result, Petitioner opted to abandon his right to represent himself and proceeded to a new trial with appointed counsel. During the retrial, Petitioner's counsel renewed the objection to the use of leg shackles several times. The trial court overruled the objections, again citing security concerns. Petitioner was again found guilty.

Petitioner appealed. The Michigan Court of Appeals, in a split decision, reversed Petitioner's conviction, holding that the use of leg shackles rendered Petitioner's right to represent himself illusory and amounted to a de factor denial of his right to self representation. The court of appeals further found that the use of the leg shackles violated his right to due process. The dissent argued that the record fully supported the trial court's decision to use leg shackles. The dissent noted that the trial court had presided over four separate criminal proceedings against Petitioner, involving 25 charges against Petitioner including two first degree murder charges. The dissent also noted that the record showed a documented history of Petitioner challenging the security of the court. People v. Arthur, No. 301762, 2012 WL 2402048 (Mich. Ct. App. June 26, 2012).

In lieu of granting leave to appeal, the Michigan Supreme Court reversed the court of appeals and remanded the matter to the trial court for an evidentiary hearing regarding the decision to keep Petitioner in leg shackles during the trial. The trial court

---

[2]It appears that Petitioner was not shackled at his first trial.

was directed to articulate with particularity the reasons for requiring Petitioner to wear shackles at trial. The trial court was further ordered to receive evidence and make findings of fact regarding whether the physical restraints were justified and whether those restraints were visible to any jurors, either during jury selection or afterward. The Michigan Supreme Court also retained jurisdiction. People v. Arthur, 493 Mich. 935 (2013).

On remand, the trial court conducted an evidentiary hearing at which it took testimony from the twelve jurors and the one alternate juror. The trial court then issued a decision making the following findings of fact:

- All twelve jurors who deliberated to verdict in this matter, and one alternate juror, testified at the evidentiary hearing held March 13, 2013.

- No juror testified at the hearing held March 13, 2013 that they saw the Defendant in leg shackle restraints during jury selection.

- No juror testified at the hearing held March 13, 2013 that they saw the Defendant in leg shackle restraints during trial itself.

- Defendant's leg shackle restraints were not visible to any juror during jury selection or trial.

See Doc 5-45, 4/9/13, Findings of Fact and Conclusions of Law, at p. 2.

The trial court further concluded that leg restraints were justified in Petitioner's case based on flight concerns as evidenced by Petitioner's conduct while incarcerated and the need for security concerns in light of Petitioner's history of violent acts and behavior while incarcerated.

On review, the Michigan Supreme Court reinstated Petitioner's convictions and sentences. People v. Arthur, 495 Mich. 861 (2013).

4

III. Facts

The relevant facts relied upon by the Michigan Court of Appeals' in its first opinion are presumed correct on habeas review. See 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> The victim testified that defendant pulled out a gun and took $130 to $140 dollars from him. Subsequently, defendant ordered the victim to drive into an alley where, consistent with defendant's demands, he got out of the car, stripped to his underwear and socks, and got into the trunk. Defendant then closed the trunk. While the car was being driven, defendant again asked about some money, and then shot the victim two to four times. When the car stopped, defendant opened the trunk and again asked about the money. The trunk again closed, and defendant drove to another location where he shot the victim four to five more times while he was lying in a fetal position in the trunk.

People v. Arthur, No. 273577, 2008 WL 239627, at * 1-2.

IV. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> 
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An

5

"unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. See Woods v. Etherton, 136 S. Ct. 1149, 1152 (2016).

## V. Petitioner's Claims

### 1. Right to Self-Representation/Shackling

Petitioner first claims that he was denied the right to self-representation because of the trial court's decision to place him in shackles. Criminal defendants have a constitutional right to conduct their own defense at trial, if they voluntarily and intelligently elect to do so. Martinez v. Court of Appeal of California, Fourth Appellate Dist., 528 U.S. 152, 154 (2000); Faretta v. California, 422 U.S. 806, 807 (1975). However, the right to self-representation is not absolute. Martinez, 528 U.S. at 161. Moreover, a defendant's request for self-representation must be made clearly and unequivocally. See Faretta, 422

U.S. at 835; See also U.S. v. Martin, 25 F.3d 293, 295 (6th Cir. 1994)("To assert the right of self-representation, a defendant must do so unequivocally."). Finally, a defendant's invocation of his right of self-representation must be timely made. See e.g. Moore v. Haviland, 531 F.3d 393, 403 (6th Cir. 2008).

Here, the record reflects that Petitioner's request to represent himself was not unequivocal. Petitioner conditioned his request for self-representation as follows:

> THE DEFENDANT: I'm just saying, I mean, it's a constitutional violation for me to even have shackles on. I'll just let that issue there stand, and I'll let [trial counsel] represent me, sir, and I have nothing else to say.
>
> THE COURT: It isn't because he can't move around in the courtroom like anyone else. So I don't mischaracterize your position here, because you're not going to be able to move around in the courtroom like a regular attorney, you feel that would prejudice your case and you don't want to go that way. You'd rather have an attorney do it and you sit at the counsel table?
>
> THE DEFENDANT: The answer to that is probably yes, in part, because I'm wearing shackles, your Honor, so yeah. I'm going to step aside and I'll let the appellate courts handle whatever, and I'll let my attorney speak for me from now on.

(Tr. 9/1/10, pp. 14-15, Doc #34, pg 5-6).

Moreover, the Michigan Supreme Court reviewed Petitioner's claim and concluded that Petitioner's right to self representation was not violated. The court explained:

> The trial court did not unconstitutionally "nullify" the defendant's right to self-representation by declining to remove the defendant's leg shackles. That the defendant elected to relinquish his right of self-representation rather than exercise that right while seated behind the defense table does not amount to a denial of the defendant's right of self-representation. See, e.g., Lefevre v. Cain, 586 F.3d 349 (C.A.5, 2009) (shackling does not violate a defendant's right to self-representation), cert den 559 U.S. 1016, 130 S.Ct. 1941, 176 L.Ed.2d 381 (2010).

People v. Anderson, 495 Mich. 861, 862.

This conclusion is neither unreasonable nor contrary to federal law. Petitioner did not clearly and unequivocally ask to represent himself. Rather, Petitioner agreed to allow appointed counsel to represent him at his trial and sentencing without making any subsequent demands to represent himself. "Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." McKaskle v. Wiggins, 465 U.S. 168, 183 (1984). Because Petitioner never again asserted any right to self-representation, he is not entitled to relief on this ground.

Even if Petitioner had not waived his right to self-representation, the fact that he was shacked during trial does not entitle him to habeas relief. There is no clearly established Supreme Court precedent to support Petitioner's contention that he has a right to represent himself without shackles. There are three approaches followed by the circuit courts on this issue.[3] The Sixth Circuit has not directly addressed the issue of whether requiring a pro se defendant to wear shackles or restraints violates the right to self-representation. Circuit precedent, however, does not constitute "clearly

---

[3]The first approach finds that there is no denial of the right to self-representation when a criminal defendant who wishes to represent himself or herself is shackled or physically restrained at trial. See Lefevre v. Cain, 586 F.3d 349, 358 (5th Cir. 2009); United States v. Cooper, 591 F.3d 582, 586-87 (10th Cir. 2010); United States v. Van Sach, 458 F.3d 694, 699–700 (7th Cir. 2006). A second line of cases either hold or suggest that there is no violation of a criminal defendant's right to self-representation as long as safeguards are present to minimize any prejudice due to the restraints. See U.S. v Fields, 483 F.3d 313, 357 (5th Cir. 2007); Overton v Mathes, 425 F.3d 518, 520-21 (8th Cir. 2005); Frantz v Hazey, 533 F.3d 724, 728 (9th Cir. 2008);United States v. Jackson, 419 F. App'x. 666, 670 (7th Cir. 2011). One circuit has found that shackles violated a defendant's right to self-representation. See Oses v. Massachusetts, 961 F.2d 985, 986 (1st Cir.1992).

established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012). In the absence of clearly established Supreme Court law that would suggest that a Petitioner is denied his right to self-representation when he is required to remain shackled while representing themself, Petitioner cannot prevail on his claim that he was denied the right of self-representation because he was shackled.

2. Due Process/Shackling

Petitioner also claims that he was denied his right to due process by having to proceed to trial in shackles. The Michigan Supreme Court considered the issue and held the trial court's decision to shackle Petitioner was fully supported by the record and did not amount to a denial of due process, explaining:

> . . . the trial court did not violate the defendant's due process rights by ordering the defendant to wear leg shackles in the first place because the court was justified in imposing those limited restraints to avoid the risk of flight and to ensure the safety of those present in light of the defendant's reported escape attempt and the fact that the defendant required extra police security when he was transported to court.
> While a defendant's right to self-representation encompasses certain specific core rights, including the right to be heard, to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at times, the right to self-representation is not unfettered. McKaskle v. Wiggins, 465 U.S. 168, 174, 176–178, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). The defendant, who undeniably possesses physical prowess, posed a physical danger because of his history of violent acts: he was a convicted double murderer before the instant case began, serving life without parole for shooting two victims in the head during a carjacking. The judge had presided over both the previous trial in this case and the other murder trial, and understandably formed an impression that the defendant was not only violent, but cunning, improvisational, and bent on the execution and concealment of his criminal acts. The court addressed these concerns by placing the defendant in the most reasonable restrictive restraints available.
> The court's decision does not violate Deck v. Missouri, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), where the defendant was shackled with not

> only leg irons, but also handcuffs and a belly chain, all of which were visible to the jury. The core rule of Deck is that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." Deck, 544 U.S. at 629, 125 S.Ct. at 2007 (emphasis added). That is not the case here as the court sought to shield the defendant's leg restraints from the jury's view. Further, the record on remand makes clear that no juror actually saw the defendant in shackles.

694 Mich. at 862. This decision was neither unreasonable nor contrary to established federal law.

As the Michigan Supreme Court noted, the Constitution prohibits the use of visible shackles during the guilt or penalty phases of a trial "unless that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial." Deck v. Missouri, 544 U.S. 622, 624 (2005)(quoting Holbrook v. Flynn, 475 U.S. 560, 568-569 (1986)). Deck's facts and holding, however, "concerned only visible restraints at trial." Mendoza v. Berghuis, 544 F.3d 650, 654 (6th Cir. 2008). Thus, the Michigan Supreme Court correctly concluded that because the shackles were not visible, Deck did not apply. This factual finding–that the shackles were not visible–is presumed correct unless Petitioner can show it is clearly erroneous. See Brumley v. Wingard, 269 F.3d 629, 637 (6th Cir. 2001)(citing Sumner v. Mata, 449 U.S. 539, 546-47 (1981)). Petitioner has not done so.

Indeed, the record shows that there were numerous reasons to support the decision to use shackles. Petitioner was a physically large man[4] with a history of

---

[4] The Michigan Department of Corrections Offender Tracking Information System (OTIS) lists Petitioner as 6'1 and 295 lbs.

violent acts.[5] By the time of Petitioner's re-trial, he had already been convicted of a double murder for the "execution-style" shooting of two other individuals, and sentenced to life without parole. It was not unreasonable for the trial court to be concerned with risk of flight or escape. The trial court was aware that Petitioner had previously planned to escape from the Saginaw County jail (Tr. 4/5/04, Doc. 5-9, p. 2), and had previously expressed his concern that Petitioner posed a flight risk. (Tr. 4/25/05, Doc. 5-16, pp. 3-4). Petitioner also made threatening remarks regarding the prosecutor and trial court. (Tr. 7/19/10, Doc. 5-32, pp. 2-5). As the Michigan Supreme Court found, these facts justified the use of shackles. Petitioner is therefore not entitled to relief on his claim that his due process rights were violated by the use of shackles.

## VI. Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is **DENIED.** Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed

---

[5]Petitioner is serving prison sentences for a number of other crimes, which he committed just over a month after committing the instant offenses. The other convictions stem from the December 2002 "execution-style" shooting of 32-year-old man and 17-year-old girl, for which he was convicted of two counts of first-degree murder, conspiracy to commit first-degree murder, carjacking, and conspiracy to commit armed robbery. The Michigan Courts affirmed Petitioner's convictions and Petitioner sought, but was denied, habeas relief. See Arthur v. McQuiggin, No. 2:07-CV-13444 (E.D. Mich. March 27, 2014).

further.  The Court therefore **DENIES** a certificate of appealability under 28 U.S.C. § 2253(c)(2).[6]  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**SO ORDERED.**

                                        s/Avern Cohn
                                        AVERN COHN
                                        UNITED STATES DISTRICT JUDGE

Dated: October 14, 2016
       Detroit, Michigan

---

[6]"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.